```
                  DISTRICT COURT OF THE VIRGIN ISLANDS
                    DIVISION OF ST. THOMAS AND ST. JOHN

                                       )
                                       )
In re Complaint of Hollis B.           )
Corp.                                  )
                                       )   Civil No. 2016-14
                                       )
```

**ATTORNEYS:**

**Jennifer Quildon Miller-Brooks**
Hanilton, Miller & Birthisel, LLP
Miami, Fl
    *For Hollis B. Corp.*

# ORDER

**GÓMEZ, C.J.**

Before the Court is the motion of Hollis B. Corp. for Entry of an Order Approving Ad Interim Stipulation and Entry of an Order Issuing Monition and Injunction.

## FACTUAL AND PROCEDURAL HISTORY

On October 22, 2014, Salvatore and Dottie Gerace (the "Geraces") were passengers on the New Horizons, a vessel owned and operated by Hollis B. Corp. ("Hollis"), J. Quest Corp., and T.K. Sailing Corp. As the New Horizons was navigating through Pillsbury Sound in St. Thomas, it was struck by the Capital Venture, a vessel owned and operated by Varlack Ventures, Inc. The Geraces allege that they were both seriously injured as a result of the collision. The Geraces also allege that Hollis, J. Quest Corp., J.K. Sailing Corp., and Varlack Ventures were each negligent in the operation of their respective vessels. The Geraces further allege that this negligence was the cause of their injuries. The Geraces thereafter retained counsel.

On November 11, 2014, the Geraces counsel sent a letter to New Horizons's operators which stated:

> Please be advised that Salvatore Gerace has consulted my law firm regarding the above-referenced accident. I am now in the process of investigating this matter.

> Sometimes there are several versions as to what occurred at an accident. Before proceeding further, I would like to know your account of what occurred at this accident. Please advise us whether you feel the accident was your fault or another party's fault, the reasons for your belief, and the names and addresses of any witnesses to this accident. Please send me your written response to this letter as soon as possible.
>
> If you are covered by liability insurance, please be certain to indicate the name of your insurance company so that we may deal directly with them and minimize further inconvenience to you. Be sure to notify your liability insurance carrier or insurance agent of this incident immediately.

ECF No. 12, Exh. 2.

On December 1, 2014, counsel for Hollis responded to the November 11, 2014, letter, indicating that Varlack Ventures was at fault for the accident and directing the Geraces to Varlack's insurance carrier.

On November 8, 2015, the Geraces commenced a negligence action, docketed at Civil No. 2015-74, against Varlack Ventures, Inc.; Hollis; J. Quest Corp.; and T.K. Sailing Corp. d/b/a New Horizons Sailing Charters.

On February 12, 2016, Hollis filed the instant Complaint for Exoneration from or Limitation of Liability, docketed at Civil No. 2016-14. Hollis's complaint alleges that Hollis is the sole owner of the vessel New Horizons. Hollis asserts that it should be exonerated from any liability for the October 22, 2014, collision. In the alternative, Hollis asserts that its

*Complaint of Hollis B. Corp.*
Civil No. 2016-14
Order
Page 4

liability should be limited to New Horizons's post-casualty value.

Hollis also filed an *Ad Interim* Stipulation for value and costs to "stand as security for costs and all claims in the limitation proceeding petitioned for by [Hollis]." ECF No. 2, Exh. 1 at 2. The stipulation asserts that the value of the New Horizons is $43,261 and provides that, if the Court orders, "said surety shall, within thirty (60) [sic] days after entry of an order confirming the value of [Hollis'] interest in the [New Horizons] . . . pay into the Court's registry the sum of up to and not exceeding $43,261 plus interest, or in the alternative, file a bond or stipulation of value in such amount." *Id.* Finally, the stipulation provided that

> [s]aid surety agrees to abide by all orders of the District Court . . . and to pay, in accordance with and subject to terms and conditions of [Hollis]'s insurance policy, the amount awarded by the final judgment of this District Court, or by an appellate court if an appeal intervenes, the sum of up to and not exceeding $43,261, with interest as aforesaid, unless the amount or value of [Hollis]'s interest in the [New Horizons] is paid into the Court's registry by the [Hollis] or if a Stipulation of Value is filed, in which event this *Ad Interim* Stipulation shall be void.

*Id.* The stipulation is signed by counsel for Hollis. In support of the *ad interim* stipulation, Hollis also filed an affidavit from John M. Graff--a National Association of Marine Surveyors ("NAMS") certified marine surveyor--who appraised the

post-collision value of the New Horizons at $43,261. ECF No. 3, Exh. 1.

Also on February 12, 2016, Hollis filed a Motion for Entry of Order Approving *Ad Interim* Stipulation and Issuing Monition and Injunction. The motion asked the Court to approve the a*d interim* stipulation as "approved security"; issue an injunction "against all persons or corporations claiming damage for any and all loss, destruction, injuries, and/or death caused by or resulting from the casualty set forth in the [limitation complaint]"; and direct those parties to file their claims in the limitation proceedings. ECF No. 4, Exh. 1 at 2.

The Geraces opposed Hollis's limitation action. The Geraces argued that Hollis' limitation complaint was untimely because it was filed more than six months after Hollis received written notice of the Geraces' claim. In support of that argument, the Geraces filed with the Court the November 11, 2014, letter that their counsel sent to the New Horizons' operators.

## DISCUSSION

The Limitation of Liability Act grants shipowners the right to limit liability for injury and damage claims arising out of accidents involving their vessels. *See* 46 U.S.C. § 30501, *et seq*. As the Supreme Court has explained, the animating purpose of the Act

Case: 3:15-cv-00074-CVG-RM   Document #: 51   Filed: 09/30/16   Page 6 of 17

Complaint of Hollis B. Corp.
Civil No. 2016-14
Order
Page 6

>    was to encourage shipbuilding and to induce the
>    investment of money in this branch of industry by
>    limiting the venture of those who build the ships
>    to the loss of the ship itself or her freight then
>    pending, in cases of damage or wrong happening,
>    without the privity, or knowledge of the shipowner,
>    and by the fault or neglect of the master or other
>    persons on board.

*Hartford Acc. & Indem. Co. of Hartford v. S. Pac. Co.*, 273 U.S. 207, 214 (1927). To that end, the Act provides that the liability of a shipowner arising out of a maritime accident "shall not exceed the value of the vessel and pending freight," so long as the accident occurred "without the privity or knowledge of the owner." 46 U.S.C. § 3505. These protections extend to the owners of pleasure vessels. *See Keys Jet Ski, Inc. v. Kays*, 893 F.2d 1225, 1228-29 (11th Cir. 1990).

    Supplemental Rule F of the Federal Rules of Civil Procedure outlines the procedure to be followed in limitations actions. First, a shipowner must file a complaint in an appropriate district court within six months of receiving written notice of a claim. Fed. R. Civ. P. Supplemental Rule F(1); *see also* 46 U.S.C. § 30511(a). Thereafter, the shipowner must deposit with the court "a sum equal to the amount or value of the owner's interest in the vessel . . . , or approved security therefor." Supplemental Rule F(1); *see also* 46 U.S.C. § 20511(b)(1). If a shipowner opts to provide the district court with approved security for the cost of vessel, he must also give security "for

interest at the rate of 6 percent per annum from the date of the security." Supplemental Rule F(1). Additionally, the shipowner must provide security for costs and "such sums, or approved security therefor, as the court may from time to time fix as necessary to carry out the provisions of the statutes as amended." *Id.*; *see also* 46 U.S.C. § 30511(b)(1).

After a shipowner files a limited liability complaint and complies with the requirements of Supplemental Rule F(1), the district court must stay all proceedings against the shipowner that involve issues arising out of the subject matter of the limitation action. *See* Supplemental Rule F(3); 46 U.S.C. § 30511(c). The district court will then "direct all potential claimants to file their claims against the shipowner in the district court within a specified period of time." *Gorman v. Cerasia,* 2 F.3d 519, 523 (3d Cir. 1993) (internal quotation marks omitted); *see also* 46 U.S.C. § 30511(c); Supplemental Rule F(3)-(4). Additionally, "[o]n application of the plaintiff the court shall enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action." Supplemental Rule F(3).

## **ANALYSIS**

### I. Timeliness of Hollis' Complaint

Under the Limitation Act, a limitation "action must be brought within six months after a claimant gives the owner written notice of a claim." 46 U.S.C. § 30511. The six-month time bar is jurisdictional. *In re Eckstein Marine Serv. L.L.C.*, 672 F.3d 310, 315-16 (5th Cir. 2012).

The purpose of the six-month time bar "is to require that a shipowner, in order to gain the benefit of his statutory right to limit his liability, act promptly." Complaint of Morania Barge No. 190, Inc., 690 F.2d 32, 33 (2d Cir. 1982). Service of a formal complaint is not necessary to trigger the six month clock, and "it is settled that letters sent by claimants to vessel owners may constitute notice of claim." Doxsee Sea Clam Co., Inc. v. Brown, 13 F.3d 550, 554 (2d Cir. 1994).

Here, at the latest, Hollis received the letter from the Geraces' counsel on December 1, 2014. Hollis was served with the Geraces' complaint on November 17, 2015. Hollis' limitation complaint was filed on February 2, 2016. Thus, if the letter constitutes written notice of the Geraces' claim, Hollis's limitation complaint is untimely, and the Court is without power to hear it.

To determine whether a communication constitutes written notice of claim, the Fifth Circuit uses a "'reasonable possibility' test." *See In re The Complaint of RLB Contracting, Inc.*, 773 F.3d 596, 602 n.15 (5th Cir. 2014). Under that test, "a communication qualifies as 'written notice' if it 'reveals a reasonable possibility that the claim will exceed the value of the vessel.'" *Id.* at 602 (quoting *In re Eckstein Marine Serv., L.L.C.*, 672 F.3d 310, 317 (5th Cir. 2012)). The reasonable possibility test consists of two prongs. First, the writing must "communicate[] the reasonabe possibility of claim," and second, the writing must "communicate[] the reasonable possibility of damages in excess of the vessel's value." *Id.* (emphasis omitted). Whether a written notice provides notice of claim "requires the court to engage in a fact-intensive inquiry into the circumstances of the case." *In re Eckstein Marine Serv., LLC,* 672 F.3d 310, 317 (5th Cir.2012).

In *Doxsee Sea Clam Co., Inv. v. Brown*, the Second Circuit held that a letter sent to a shipowner by a claimant's attorney was sufficient written notice of claim. 13 F.3d 550, 554-55 (2d Cir. 1994). The "letter made specific reference to 'a claim against' Doxsee by Brown," "specifically referred to [the attorney] having been 'retained' to represent Brown against Doxsee[,] and the 'Re:' line of the letter was styled in the

manner of an actual, present controversy: 'Christian Brown v. Doxsee Sea Claim Company.'" *Id.* Moreover, the letter appeared to be unequivocal in its allocation of fault, asserting that "Doxsee should be paying Brown's medical and hospital expenses, as well as maintenance for the time when Brown was not hospitalized" and listed the hospital bills and costs and "demanded payment for all outstanding bills." *Id.* at 552. The Second Circuit found that it was "apparent from [the letter's] tenor that its import was to inform Doxsee that Brown was considering a claim that exceeded the value of the [vessel]." *Id.* at 555. the court held that it provided sufficient notice. *Id.; see also In re Donjon Marine Co.*, No. CIV.A.09-1815SDWMCA, 2009 WL 3241687, at *3 (D.N.J. Oct. 7, 2009) (holding that letter gave written notice because it "referenced the name of a lawsuit against [shipowner] and indicated that as a result of [shipowner]'s negligence, Claimant suffered an accident that caused personal injuries"); *Complaint of Beesley's Point Sea-Doo, Inc.*, 956 F. Supp. 538, 544 (D.N.J. 1997) (holding that multiple letters to shipowner from claimant's attorney were sufficient notice because the letters "referenced the name of a lawsuit against [the shipowner], referred to [the claimant]'s 'claims,' and threatened legal action" and one letter stated that "[t]here was an accident . . . which the [the claimant's

attorney] . . . believes [the shipowner] should be held liable").

While *Doxsee* occupies "[t]he outer limits of adequacy," *In re Miller's Launch, Inc.*, No. 10 CIV. 0872 BMC, 2010 WL 3282627, at *3 (E.D.N.Y. Aug. 18, 2010), *Complaint of Okeanos Ocean Research Foundation, Inc.*, 704 F. Supp. 412 (S.D.N.Y. 1989) provides some insight into what constitutes inadequate notice. In *Okeanos*, the claimant's attorney wrote the shipowner a letter reading:

> Please be advised that we have been retained by the above named to represent him in an action arising out of injuries he sustained while on your boat, the FIN BACK II, on the above date.
>
> Please forward a copy of this letter to your insurance carrier if you are insured, and contact this office to discuss this matter further.

*Id.* at 415. The Southern District of New York held that the letter did not provide sufficient notice because the "letter is void of any details of the incident in question" and "fail[ed] to blame [the shipowner] for the injuries or make it clear that [the] claimant intend[ed] to seek damages from [the shipowner]." *Id.* at 416-17. As the district court explained, "[a] vessel owner is not required to infer that someone may bring a claim; a claimant must make his intentions clear in order to trigger the six month statute of limitations." *Id.* at 417; *see also Rodriguez Morira v. Lemay*, 659 F. Supp. 89, 91 (S.D. Fla. 1987)

(holding that there was no notice of claim where letter "d[id] not inform the [shipowner] of [the claimant]'s demand of a right or supposed right, blame them for any damage or loss, or call upon them for something due [the claimant]")

Here, the Court finds the question to be a close one, but holds that the Geraces' letter to Hollis did not provide sufficient written notice of a claim. Indeed, it is clear that the November 11, 2014, letter is from the Geraces' attorney. It references the accident, requests insurance information, and suggests that Hollis notify its insurance carrier of the accident "immediately." ECF No. 12, Exh. 2. However, the letter provides no details of the accident, fails to describe the injuries, damages the Geraces suffered, and places no blame on Hollis. Rather, it indicates that the Geraces' counsel was "in the process of investigating this matter." *Id.*

As such, the Court is not satisfied that Hollis had sufficient notice to trigger the six-month clock. See *Complaint of Okeanos Ocean Research Foundation, Inc.*, 704 F. Supp. at 416-17; *Rodriguez Morira v. Lemay*, 659 F. Supp. at 91. The six-month Limitation Act filing requirement was triggered when the Geraces sued Hollis on November 8, 2015. Thus, the limitation complaint was timely filed.

### I. *Ad Interim* Stipulation as Approved Security

Hollis argues that its *ad interim* stipulation is sufficient security that satisfies the requirements of Supplement Rule F(1) such that the Court must stay the negligence action commenced by the Geraces.

Supplemental Rule F(1) requires a shipowner to either (1) "physical[ly] surrender . . . the vessel and pending freight to a trustee," *New York Marine Managers, Inc. v. Helena Marine Serv.*, 758 F.2d 313, 317 (8th Cir. 1985); *see also* Supplemental Rule F(1), (2) "deposit with the court . . . a sum equal to the amount or value of the owner's interest in the vessel and pending freight; or (3) deposit "approved security" for "the amount or value of the owner's interest in the vessel and pending freight," *id*. Complying with one of these three requirements "is a condition precedent to obtaining the benefits of the Limitation Act." *New York Marine Managers, Inc.*, 758 F.2d at 317.

> Submission of an *ad interim* stipulation is one way of satisfying Rule F's requirement of the vessel or security for the vessel as a prerequisite to proceeding with a petition for limitation. The stipulation is *ad interim,* or temporary, so that if the value of the vessel is challenged the court may allow for 'due appraisement' of the vessel prior to entering a final order or approving a stipulation establishing the value of the vessel. 'Due appraisement' generally means appraisement proceedings which afford interested parties an

>opportunity to be heard and to challenge the appraisement offered by petitioner.

*Complaint of N. Lubec Mfg. & Canning Co.*, 647 F. Supp. 1132, 1134 (D. Me. 1986) (quoting Supplemental Rule F(7) (citation omitted)); *see also The Ontario No. 1*, 80 F.2d 85, 87-88 (2d Cir. 1935). (explaining that, "[a]lthough the rule is silent on the subject," a "long standing" practice permits a shipowner to "obtain ex parte the issuance of a monition and injunction if he posts an *ad interim* stipulation in an amount approved by the court after examining affidavits presented by [the shipowner]").

Of course, an *ad interim* stipulation must do more than simply name the sum a shipowner believes he is obligated to pay. Supplemental Rule F(1) plainly requires a shipowner to deposit "security" for that sum. *See Koch Ref. Co. v. M/V Jennifer Boudreaux*, No. CIV. A. 87-5661, 1993 WL 92515, at *1 (E.D. La. Mar. 23, 1993) (permitting shipowner to substitute letter of undertaking from insurance company "as security for the *ad interim* stipulation in lieu of the bond . . . which is presently serving as security for the *ad interim* stipulation"); *see also The Fairwill*, 56 F. Supp. 887, 890 (E.D. Va. 1944) (ordering shipowner to "give a stipulation for value *with*

sufficient surety" (emphasis added)). Adequate security[1] must provide a sufficient guarantee "to secure the . . . Claimants' ability to collect for any claims on which they prevail." *El Paso Prod. GOM, Inc. v. Smith*, 406 F. Supp. 2d 671, 679 (E.D. La. 2005).

As in the case of any security, when a shipowner submits an *ad interim* stipulation, the stipulation is "a substitute for the vessel itself." *See Hartford Accident & Indemnity Co. v. Southern Paccific Co.*, 273 U.S. 207, 218-19 (1927)). It follows that, to qualify as "approved security," an *ad interim* stipulation should provide a guarantee of payment in line with the guarantee afforded by holding the vessel in trust "for the benefit of [the] claimants." *See* Supplemental Rule F(1). At the very least, this should require a letter of undertaking executed by an appropriate surety. *See Karim v. Finch Shipping Co.*, No. CIV. A. 95-4169, 1998 WL 713396, at *2 (E.D. La. Oct. 6, 1998), *aff'd sub nom.* 177 F.3d 978 (5th Cir. 1999) (ordering shipowner to provide additional security because the court "ha[d] concerns

---

[1] Security is a "term that is usually applied to an obligation, pledge, mortgage, deposit, lien, etc., given by a debtor in order to make sure the payment or performance of his debt, by furnishing the creditor with a resource to be used in case of failure in the principal obligation." Black's Law Dictionary (rev. 4th ed. 1968.). Security may also refer "to one who becomes surety or guarantor for another." *Id.*

about the stability and reliability of the current letter of undertaking proffered by Ocean Marine [Mutual Protection & Indemnity Association, Ltd.]"); *Matter of Compania Naviera Marasia S. A., Atlantico*, 466 F. Supp. 900, 902 (S.D.N.Y. 1979) (discussing practice, in connection with *ad interim* stipulations, of "accept[ing] letters of undertakings given by underwriters . . . in order to avoid the detention of vessels and the expense of posting security in other forms").

Here, Hollis's *ad interim* stipulation does not include a promise from Hollis as principal to pay the $43,261 that Hollis asserts the New Horizons is worth. Rather, the stipulation refers to "said surety" who would make that payment. See ECF No. 2, Exh. 1 at 2. The stipulation does not identify who "said surety" is. Hollis has also failed to provide the Court with a letter of undertaking executed by a surety and guaranteeing payment. Moreover, the stipulation provides that "said surety" will pay the amount "awarded by final judgment," but only to the extent that it is compatible with the "terms and conditions of [Hollis]'s insurance policy." *Id.* Hollis fails to identify its insurance provider or any details of the terms and conditions of its policy.

"The court possess great discretion in determining just what constitutes appropriate security." *Luhr Bros. Inc. v.*

*Gagnard*, 765 F. Supp. 1264, 1268 n.4 (W.D. La. 1991); *see also Karim*, 1998 WL 713396, at *1 ("The Court has an absolute right to determine what constitutes approved security" (internal quotation marks omitted)). Because Hollis has failed to provide a letter of undertaking executed by an appropriate surety, and because Hollis purports to limit its obligation to pay pursuant to the terms of its insurance policy, the Court holds that the *ad interim* stipulation is not "approved security." See Supplemental Rule F(1).

The premises considered, it is hereby

**ORDERED** that the Motion for Entry of Order Approving Ad Interim Stipulation and Issuing Monition and Injunction is **DENIED** without prejudice.[2]

S\_____
       **Curtis V. Gómez**
       **District Judge**

---

[2] The Court's denial of Hollis's *ad interim* stipulation does not preclude Hollis from remedying the defects in its *ad interim*. *See Guey v. Gulf Ins. Co.*, 46 F.3d 478, 480 (5th Cir. 1995) (holding that failure to deposit approved security is not jurisdictional).